# IN THE COURT OF APPEALS OF IOWA

No. 17-0491
Filed May 2, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**EVER ULISES BONILLA,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

Defendant appeals from his convictions for third-degree sexual abuse and false imprisonment. **AFFIRMED**.

Mark C. Smith, State Appellate Defender, and Bradley M. Bender, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Aaron J. Rogers, Assistant Attorney General, for appellee.

Considered by Vogel, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2018).

**VOGEL, Presiding Judge.**

Ever Bonilla appeals from his convictions for third-degree sexual abuse and false imprisonment, contending his trial counsel was ineffective in failing to specifically assert in his motion for judgment of acquittal the insufficiency of the evidence supporting the false-imprisonment charge.[1] Bonilla also asserts the district court erred in determining the weight of the evidence supports the jury's verdict on the false-imprisonment conviction. Finally, Bonilla contends the district court erred in ordering him to pay restitution for court costs and court-appointed-attorney fees. Because we conclude there was sufficient evidence to support the false-imprisonment charge, Bonilla's counsel was not ineffective in failing to make a more specific argument in the motion for judgment of acquittal. Also, we conclude the jury verdict was not against the weight of the evidence and the district court considered Bonilla's ability to pay in ordering restitution. Accordingly, we affirm Bonilla's convictions and sentences.

## I.  Background Facts and Proceedings

From the evidence presented at trial, the jury could have found the following facts. Bonilla and his former girlfriend, M.F., had one young child together but were not living together. On the evening of October 10, 2016, Bonilla messaged M.F. and asked if he could take their child to a restaurant. M.F. agreed and drove herself, Bonilla, and their son to the restaurant, but they left soon as it was near closing time. After getting food at a fast-food restaurant, they went to Bonilla's

---

[1] Bonilla does not challenge the sufficiency of the evidence as to the sexual-abuse conviction.

parents' home, where Bonilla had a room upstairs. The child watched cartoons and eventually fell asleep on the bed.

Bonilla then asked M.F. to lie down on the bed with him. M.F. told him she was not interested, and she attempted to gather her son and leave the room. Bonilla prevented her from leaving, pushed her down, and attempted to hug and kiss her. M.F. still refused and tried to push Bonilla away. Bonilla grabbed M.F., forcefully removed her pants and underwear, and penetrated her vaginally while recording the encounter with his cell phone.

M.F. was eventually able to get away from Bonilla and make it to the top of the stairs. M.F. found a knife and prepared to use it to defend herself; however, Bonilla grabbed a glass cup, and, according to M.F.'s testimony, he threatened to "to cut this glass and . . . slit [M.F.'s] throat with the glass." Although she had fled from the room once, M.F. did not want to leave her son alone with Bonilla. Bonilla then forced M.F. back into the room where he continued to perform sex acts on her. He recorded the acts on his cell phone while M.F. repeated her pleas to stop. During the acts, Bonilla held the glass cup in his hand. Once the encounter ended, M.F. called the police from a downstairs bathroom. When the police arrived, they collected M.F.'s son and detained Bonilla.

The State charged Bonilla with third-degree sexual abuse and false imprisonment on November 21, 2016. Both charges were tried before a jury. Bonilla was found guilty, and he was sentenced to indeterminate prison terms of ten years on the sexual-abuse conviction and one year on the false-imprisonment conviction, the sentences to be served consecutively. The district court also imposed a special sentence pursuant to Iowa Code section 903B.1 (2016) and

required Bonilla to register as a sex offender pursuant to Iowa Code chapter 692A. The fines were suspended but Bonilla was ordered to pay restitution in the form of court-appointed-attorney fees as well as court costs.

Bonilla appeals.

## II. Standard of Review

We review claims of ineffective assistance of counsel de novo. *State v. Thorndike*, 860 N.W.2d 316, 319 (Iowa 2015). We review sufficiency-of-the-evidence claims for errors of law. *State v. Begey*, 672 N.W.2d 747, 749 (Iowa 2003). When a district court rules on a motion for new trial based on whether the verdict was contrary to the weight of the evidence, we review the ruling for abuse of discretion. *State v. Thompson*, 836 N.W.2d 470, 476 (Iowa 2013). Our review of a restitution order is for correction of errors at law. *State v. Watts*, 587 N.W.2d 750, 751 (Iowa 1998).

## III. False Imprisonment Conviction

### A. Ineffective Assistance of Counsel

Bonilla concedes his trial counsel failed to preserve error on his claim of insufficient evidence and, instead, raises his claim through the lens of ineffective assistance of counsel. Ineffective-assistance-of-counsel claims are an exception to the traditional error-preservation rules. *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) (internal citations omitted). If a claim of ineffective assistance of counsel is raised on direct appeal from the criminal proceedings, the court may address it if the record is adequate to decide the claim. *Id.* If the record is not adequate, the defendant may raise the claim in a postconviction action. *Id.* (citing Iowa Code § 814.7(3)).

To succeed on a claim of ineffective assistance of counsel, Bonilla must show by a preponderance of the evidence: "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Thorndike*, 860 N.W.2d at 320 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). If there is sufficient evidence to support the verdicts, counsel cannot be found to be ineffective for failing to make a more specific argument in his motion for judgment of acquittal. *State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004) ("A claim of ineffective assistance of trial counsel based on the failure of counsel to raise a claim of insufficient evidence to support a conviction is a matter that normally can be decided on direct appeal. Clearly, if the record in this case fails to reveal substantial evidence to support the convictions, counsel was ineffective for failing to properly raise the issue and prejudice resulted. On the other hand, if the record reveals substantial evidence, counsel's failure to raise the claim of error could not be prejudicial." (citation omitted)).

Bonilla claims the State did not present sufficient evidence that he confined M.F. beyond evidence that was merely incidental to the sexual-abuse conviction. If substantial evidence supports the verdict, we will affirm. *State v. Quinn*, 691 N.W.2d 403, 407 (Iowa 2005). Evidence is substantial if it would convince a reasonable trier of fact the defendant is guilty beyond a reasonable doubt. *Id.* We view the "evidence in the light most favorable to the State, including legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.*

Under Iowa Code section 710.7:

A person commits false imprisonment when, having no reasonable belief that the person has any right or authority to do so, the person intentionally confines another against the other's will. A person is confined when the person's freedom to move about is substantially restricted by force, threat, or deception.

"The essential elements of false imprisonment are (1) detention or restraint against one's will, and (2) the unlawfulness of such detention or restraint." *State v. Snider*, 479 N.W.2d 622, 623 (Iowa Ct. App. 1991). To determine whether the confinement is incidental to the underlying assault *Snider* adopts the assessment found in our kidnapping cases. *See State v. Robinson*, 859 N.W.2d 464, 475 (Iowa 2015); *see also State v. Rich*, 305 N.W.2d 739, 745 (Iowa 1981). The *Rich* court concluded:

> Although no minimum period of confinement or distance of removal is required for conviction of kidnapping, the confinement or removal must definitely exceed that normally incidental to the commission of sexual abuse. . . . Such confinement or removal may exist because it substantially increases the risk of harm to the victim, significantly lessens the risk of detection, or significantly facilitates escape following the consummation of the offense.

305 N.W.2d at 745. In *Robinson*, our supreme court recently noted our cases often emphasize the use of a weapon or the binding of the defendant in a fashion that exceeds confinement ordinarily incident to sexual abuse. 859 N.W.2d at 479.

Bonilla's use of the glass cup substantially increased the risk of harm because of the way he threatened to use it. While not typically thought of or used as a weapon, Bonilla threatened to break the glass in M.F.'s face unless she had sex with him, and he indicated he would use it to "slit [M.F.'s] throat with the glass." *See* Iowa Code § 702.7 (defining a dangerous weapon as any instrument that when used in a manner in which the defendant intends to inflict death or serious injury and is capable of inflicting death); *see also e.g.*, *State v. Greene*, 709 N.W.2d

535, 538 (Iowa 2006) (holding metal shards were not dangerous weapons when placed under a vehicle's tires, but they could be considered dangerous if held in defendant's hand during "a personal confrontation"). M.F. did not want to have sex with Bonilla. When he forced her to undress, she began to cry and asked him to stop. Bonilla did not stop; instead, he continued to perform sex acts on M.F. against her will while he held the glass and threatened to violently use it.

In addition, the videos Bonilla recorded include M.F.'s repeated pleas for Bonilla to let her go so she could use the bathroom. Bonilla refused her requests; instead, he continued to order M.F. to assume certain positions so he could continue to abuse her, and he threatened to break the glass in her face if she didn't cooperate. On cross examination, Bonilla admitted he would not let her go to the bathroom over her tearful pleas, and he was "confining her" without permission. The videos and Bonilla's own admissions alone provide evidence sufficient to support his conviction on the false-imprisonment count. Thus, counsel was not ineffective for failing to make more specific arguments in the motion for judgment of acquittal. Therefore, we affirm Bonilla's conviction.

### B. Motion for a New Trial

Bonilla next claims the weight of the evidence does not support the jury's verdict on the false imprisonment charge, and the district court abused its discretion in denying his motion for a new trial. A motion for a new trial based on the weight of the evidence will be granted if the district court determines the verdict is contrary to the weight of the evidence and a miscarriage of justice has occurred. *State v. Maxwell*, 743 N.W.2d 185, 193 (Iowa 2008). "The weight-of-the-evidence analysis is broader than the sufficiency-of-the-evidence analysis in that 'it involves

questions of credibility and refers to a determination that more credible evidence supports one side than the other.'" *Id.* (quoting *State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006)). A district court should overturn a jury's verdict only in extraordinary cases where the evidence preponderates heavily against the verdict. *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

This is not an extraordinary case where the evidence preponderates heavily against the verdict. The district court considered all of the evidence—including M.F.'s testimony, the four video recordings, and Bonilla's own admissions—and it found the weight of the evidence supported the jury's verdict. Upon our review of the record, we agree and find the district court did not abuse its discretion in denying Bonilla's motion for a new trial.

## IV. Restitution

Iowa criminal defendants who plead guilty or who are found guilty are required to make restitution "to the victims of the offender's criminal activities [and] to the clerk of court." Iowa Code § 910.2(1). "A defendant's reasonable ability to pay is a constitutional prerequisite for a criminal restitution order such as that provided by Iowa Code chapter 910." *State v. Kurtz*, 878 N.W.2d 469, 472 (Iowa Ct. App. 2016) (internal citations omitted). "Thus, before ordering payment for court-appointed-attorney fees and court costs, the court must consider the defendant's ability to pay." *Id.*

Upon our review of the record, it is clear the district court's sentencing order considered Bonilla's ability to pay when it ordered him to pay $500.00 in attorney fees and additional amounts in court costs. The district court noted Bonilla's ability to work while incarcerated, albeit on a limited income, as well as potential future

earnings when released based on his previous work experience. Because the court considered factors relevant to Bonilla's ability to pay, we conclude the district court did not abuse its discretion in ordering restitution.

## V. Conclusion

Because we conclude there was sufficient evidence to support the false-imprisonment conviction, Bonilla's counsel was not ineffective in failing to make a specific argument in the motion for judgment of acquittal. Also, we conclude the district court did not abuse its discretion in finding the jury verdict was not against the weight of the evidence and the district court considered Bonilla's ability to pay in ordering restitution. Accordingly, we affirm Bonilla's convictions.

**AFFIRMED.**